**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ELIZABETH A. ARAGON,<br><br>Plaintiff,<br>v.<br><br>STATE OF KANSAS, KANSAS DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | ) | Case No. 6:26-cv-1254 |

# COMPLAINT

COMES NOW Plaintiff Elizabeth A. Aragon, by and through her attorney of record, Scott M. Ufford of McDonald Tinker PA, and for her complaint against Defendant alleges and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This case contains federal claims against defendant arising under Title VII of the Civil Rights Act of 1964 ("Title VII").
2. This case also contains claims against defendants arising under Kansas common law for which this Court has supplemental jurisdiction pursuant to 42 U.S.C. § 1367.
3. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.
4. The Court has jurisdiction to hear these claims.

5. Plaintiff has fully exhausted her administrative remedies with respect to her Title VII claim against Defendant. On May 27, 2026, the EEOC issued a “right to sue” letter to Plaintiff with respect to her claims, and this action has been filed within 90 days of Plaintiff’s receipt of that letter.

## THE PARTIES

6. Plaintiff Elizabeth A. Aragon. (“Ms. Aragon”) is an individual residing in Reno County, Kansas.
7. Defendant State of Kansas, Kansas Department of Corrections (“KDOC”), is an employer covered by Title VII of the Civil Rights Act of 1964.

## FACTS RELEVANT TO PLAINTIFF’S CLAIMS

8. Ms. Aragon first began working at the KDOC in or around July 2006 before taking a brief sabbatical to obtain her degree in criminal justice. Ms. Aragon returned to KDOC in or around 2018, at which time she was hired to work as a Corrections Counselor I and later received a promotion to Corrections Supervisor with the Enforcement, Apprehension, and Investigations (EAI) unit with department at the Hutchinson Correctional Facility in Hutchinson, Kansas.
9. By summer of 2024, the Special Agent Supervisor, Abriam Lakzadeh, exhibited discriminatory behavior against Ms. Aragon and other female employees, including aggressive, vulgar, and derogatory language not used against male employees, yelling at Ms. Aragon and other female employees, closely micromanaging Ms. Aragon’s and other female employees’ work

more so than male employees, and limiting Ms. Aragon's and other female employee's freedom to perform their essential job duties.

10. Specifically, on at least one occasion in or around October 2024, Mr. Lakzadeh used security cameras to watch Ms. Aragon and other female employees and track their movements around the facility. Based on information and belief, this was not the only occasion in which such surveillance against female employees, including Ms. Aragon, transpired.

11. Mr. Lakzadeh did not use security cameras to observe male employees or track their movements around the facility.

12. At one point, in front of Ms. Aragon and other employees, including other female employees, Mr. Lakzadeh referred to another female employee as being a "clit commander."

13. In or around January of 2025, Mr. Lakzadeh told Ms. Aragon other female employees, including Cassandra Clemmer and Jennifer Autry, that they were "rape-able."

14. In or around January of 2025, Mr. Lakzadeh instructed Ms. Aragon and other female employees that they were no longer able to walk through the Hutchinson Correctional Facility without an escort, despite no issues requiring this limitation on female employees' freedom of movement throughout the facility.

15. Mr. Lakzadeh regularly excluded Ms. Aragon and other female employees from administrative meetings while including male employees.

16. Ms. Aragon and other female employees were regularly singled out and yelled at during morning meetings.

17. In or around January of 2025, Mr. Lakzadeh reprimanded Ms. Aragon and other female employees for being "too loud," despite there being no difference in behavior from that of their male counterparts who were not reprimanded.

18. Mr. Lakzadeh regularly singled out the personal lives of Ms. Aragon and other female employees, using past relationships and trauma to insult them and elicit emotional responses, which he did not do with male employees.

19. Prior to January 2025, Ms. Aragon had never previously been denied the ability to perform essential job duties, nor were male employees instructed that they could not perform their job duties without an escort and were free to roam about the facility unattended.

20. The harassment and discriminatory behavior by Mr. Lakzadeh against Ms. Aragon continued on a regular basis through March of 2025, when Ms. Aragon took FMLA leave due to medical conditions resulting from the stress of working with Mr. Lakzadeh.

21. On or around March 17, 2025, Ms. Aragon and other female employees, including Ms. Clemmer and Ms. Autry, who also experienced discrimination at the hands of Mr. Lakzadeh, filed an EEO Complaint with Human Resources Director, Tina Broomfield.

22. Prior to filing the complaint with Ms. Broomfield, other male employees and Hutchinson Correctional Facility leadership were aware of Mr. Lakzadeh's conduct and failed to report or take any action, effectively condoning and supporting his behavior.

23. On March 18, 2025, Jeff Pettijohn spoke with Don McKenna, two of the male employees in the EAI department with Ms. Aragon, and stated, "All the girls had to do was talk to Abe if there was a problem, but now they went behind his fucking back."

24. Despite being aware of his conduct for months, no action was taken by KDOC until Mr. Lakzadeh was placed on administrative leave in March of 2025 for an investigation to be conducted.

25. KDOC failed to follow through with any further corrective action against Mr. Lakzadeh following his placement on administrative leave.

26. Following his administrative leave, Mr. Lakzadeh was allowed to remain in charge of the same women against whom he had discriminated, including Ms. Aragon.

27. By failing to take prompt and sufficient action against Mr. Lakzadeh, Defendant tolerated improper treatment of Ms. Aragon while treating similarly-situated male employees more favorably.

28. After KDOC failed to take sufficient action against Mr. Lakzadeh, Ms. Aragon and two other employees, Ms. Autry and Ms. Clemmer, filed complaints with the Kansas Human Rights Commission.

29. Ms. Aragon's original KHRC complaint was filed on June 13, 2025.

30. On or around July 14, 2025, just one month after filing her KHRC complaint, Ms. Aragon was interviewed by Deputy Warden Nick Ball and Deputy Warden Tyler Clark, for an investigation purportedly related to contraband at the Hutchinson Correctional Facility.

31. The interview by Mr. Ball and Mr. Clark focused exclusively on Ms. Aragon and Cassandra Clemmer, one of the other two women who filed internal complaints against Mr. Lakzadeh and who also filed a complaint with the KHRC.

32. On August 15, 2025, Ms. Aragon received a notice of intent to terminate her employment on the grounds of unprofessional conduct, undue familiarity with inmates, introducing contraband into the facility, breaking confidentiality of the investigation, failure to return a state issued cell phone and corresponding SIM card in an undamaged condition, engaging in a relationship with a known gang member, failure to report Ms. Clemmer for allegedly introducing contraband into the facility, and engaging in discourteous and unprofessional language.

33. KDOC's basis for termination was based on false or incomplete information and used as a pretext for termination.

34. Specifically, Ms. Aragon never introduced contraband into the facility, never engaged in undue familiarity with inmates, never violated the

confidentiality of the investigation, and was never aware of any efforts by Ms. Clemmer to introduce contraband into the facility.

35. In fact, among the contraband Ms. Aragon was accused of bringing into the facility was a pair of shoes for an inmate that had been explicitly approved by Deputy Warden Misti Kroeker.

36. Ms. Aragon had previously reported to John Cannon that her phone was damaged while mowing her lawn and she had also previously reported her interactions with an individual that she learned was a gang member to Doug Woods, who informed her she was within policy, and had never received any prior discipline for these instances.

37. Ms. Aragon was not aware of any actions by Ms. Clemmer to introduce contraband into the facility.

38. To the extent any issues arose that caused Ms. Aragon concern, observations and conduct were reported to Mr. Lakzadeh and other acting supervisors.

39. Based on information and belief, despite the confidentiality of the investigation involving Ms. Aragon and Ms. Clemmer, other male KDOC employees, including Christopher Dean, who at the time was working at the El Dorado Correctional Facility with Tyler Clark, were improperly informed about and discussed the details of the investigation and received no discipline.

40. Prior to the notice of intent to terminate, Ms. Aragon had never received any discipline or corrective action regarding any of the allegations contained in the notice of intent to terminate her position.

41. On August 19, 2025, Ms. Aragon provided a letter in response to the notice of intent to terminate, contesting the grounds for termination.

42. On August 22, 2025, just two months after filing her complaint with the KHRC, Ms. Aragon was terminated from her position with KDOC based on the same false, pretextual accusations provided in the notice of intent to terminate.

43. Upon information and belief, other similarly situated male employees who have been cited with the same or similar infractions have received discipline short of termination.

44. Ms. Aragon was targeted for filing complaints against Mr. Lakzadeh and the KDOC.

45. MS. Aragon filed a subsequent complaint for retaliation with the KHRC on September 19, 2025.

**COUNT 1: TITLE VII HOSTILE WORK ENVIRONMENT**

46. Plaintiff incorporates by reference all other allegations contained in the paragraphs above.

47. Ms. Aragon is a woman.

48. Ms. Aragon sustained continued, pervasive and severe harassment when she was supervised by Mr. Lakzadeh in the following nonexclusive ways:

a. By being yelled, belittled and demeaned, which did not happen with similarly situated male employees;

b. By being limited in her work duties, including her freedom to move throughout the facility on her own accord as necessary to perform essential job functions, which did not happen with similarly situated male employees;

c. By overhearing her supervisor refer to himself as a "clit commander";

d. By being told that she was "rape-able";

e. By being observed and tracked throughout the facility through the use of surveillance cameras.

49. This harassment continued for months despite the behavior being known by Mr. Lakzadeh's administrative leadership, including Human Resources Director Tina Broomfield and Warden Dan Schnurr who observed his behavior at morning administrative meetings.

50. The harassment altered the terms, conditions and privileges of employment for Ms. Aragon.

51. The harassment clearly stemmed from gender-based animus as the comments and restrictions were based on Ms. Aragon's status as a woman.

52. The State and KDOC collectively created and maintained a hostile work environment by allowing a hostile and discriminatory supervisor to degrade and humiliate Ms. Aragon

53. As a direct and proximate result of this violation of Title VII, Ms. Aragon suffered damages due to Defendant's failure to create and maintain a workplace free of discrimination, where gender is not a barrier to opportunity.

**COUNT 2: TITLE VII DISPARATE TREATMENT DISCRIMINATION**

54. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

55. Ms. Aragon satisfactorily performed her duties for Defendant for years with minimal concerns.

56. In fact, Ms. Aragon received multiple accolades during her time working for this Defendant.

57. However, by January 2025, Ms. Aragon's job duties began being restricted based upon the conditions and micromanagement against her and other female employees by Mr. Lakzadeh, including his observation of her and other female employees through the use of the facility's surveillance cameras. Male employees were not subject to the same or similar conditions.

58. Ms. Aragon was ultimately terminated in August 2025 for unsubstantiated conduct and policy violations which had no factual support. Similarly situated male employees were not subject to false, sham investigations into false violations, losing their livelihood in the process.

59. As a direct and proximate result of these disparate treatment violations of Title VII, Ms. Aragon suffered damages due to the illegal discrimination against her by the State of Kansas and KDOC.

**COUNT 3: TITLE VII RETALIATION**

60. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

61. Ms. Aragon reported hostile harassment of Ms. Lakzadeh to HR Director, Tina Broomfield on March 17, 2025.

62. Ms. Aragon filed her initial complaint with the KHRC on June 13, 2025.

63. Barely a month after filing her complaint with the KHRC, Ms. Aragon was subjected to an investigation based upon false allegations and policy violations.

64. Ms. Aragon was further retaliated against by KDOC following her internal complaint against Mr. Lakzadeh and after filing her complaint with the Kansas Human Rights Commission, specifically based on increased scrutiny of her work, conducting an unfounded investigation against her and one other reporting female employee, and ultimately terminating her employment based upon false accusations used as pretextual justification for her termination.

65. As a direct and proximate result of these violations of Title VII, Ms. Aragon suffered damages due to this Defendant's retaliation against her.

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant; that the Court award Plaintiff all damages to which she is entitled, including but not limited to, lost wages, statutory penalties, compensatory damages, and damages for emotional distress and mental anguish; that the Court award her reasonable attorney fees and the costs of this action; and that the Court allow such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

/s/ Scott. M. Ufford

Scott M. Ufford, #27524
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, Kansas 67202
P: 316-263-5851
F: 316-263-4677
E: sufford@mcdonaldtinker.com
*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues.

/s/ Scott. M. Ufford
Scott M. Ufford

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Wichita, Kansas, as the place of trial in this case.

/s/ Scott. M. Ufford
Scott M. Ufford